**Electronically Filed
Supreme Court
SCPW-17-0000171
21-NOV-2017
09:32 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

SI UFAGA MOANA, Petitioner,

vs.

THE HONORABLE FRANCES Q. F. WONG, Judge of the
Family Court of the First Circuit,
State of Hawai'i, Respondent Judge,

and

STATE OF HAWAI'I, Respondent.
(SCPW-17-0000532; CASE NO. 1FFC-17-0000575)

JAYVAN C. CURIOSO, Petitioner,

vs.

THE HONORABLE HILARY BENSON GANGNES, Judge of the
District Court of the First Circuit, Honolulu Division,
State of Hawai'i, Respondent Judge,

and

STATE OF HAWAI'I, Respondent.
(SCPW-17-0000171; CASE NO. 1DCW-17-0000868)

SCPW-17-0000532

ORIGINAL PROCEEDINGS

NOVEMBER 21, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

Petitioner Si Ufaga Moana (Moana) seeks a writ of mandamus directing the Honorable Frances Q. F. Wong to order his release forthwith from custody in accordance with the requirement that a defendant be released upon motion if a preliminary hearing has not commenced within two days of the defendant's initial appearance. See Hawai'i Rules of Penal Procedure (HRPP) Rule 5(c)(3) (2014). Petitioner Jayvan C. Curioso (Curioso) also seeks a writ of mandamus directing the Honorable Hilary Benson Gangnes to order his release forthwith from custody in accordance with the two-day preliminary hearing requirement.

Because the State respectively charged Moana and Curioso (petitioners) by information and grand jury indictment during the pendency of these petitions, obviating the need for preliminary hearings, we ultimately deny the petitions as moot. We nonetheless consider the legal issues at the heart of these cases based on an exception to the mootness doctrine because they are capable of repetition but would otherwise evade review.

2

Under our rules of court, when a delay in the commencement of a preliminary hearing is not caused by a defendant's condition, action, or request and occurs without the defendant's consent, the keeping of a defendant in custody is permitted only when compelling circumstances justify an ongoing deprivation of liberty. HRPP Rule 5(c)(3). We now provide guidance as to when circumstances are compelling for purposes of denying a defendant's motion for release from custody when the defendant is held for a period of more than two days after initial appearance without commencement of a preliminary hearing.

## I. FACTS AND PROCEDURAL HISTORY

### A. Moana's Arrest and Preliminary Hearing

On June 20, 2017, police arrested Moana for assault in the second degree in violation of Hawaii Revised Statutes (HRS) § 707-711 (2014 & Supp. 2016). On June 22, 2017, Moana was charged by complaint with abuse of family or household members, which was statutorily enhanced to a class C felony due to the alleged incident occurring in the presence of a minor household member under the age of 14. HRS § 709-906(1), (9) (Supp. 2016). The same day, Moana made his initial appearance before the Family Court of the First Circuit (family court); the family

court confirmed bail at $30,000 and issued an order scheduling a preliminary hearing for June 26, 2017.[1]

On the day of the preliminary hearing, the State requested a continuance, informing the family court that the complaining witness had "absented herself" from the proceeding. The prosecutor stated that the complainant had expressed a reluctance to come to court when she was served on the preceding Friday by the prosecuting attorney's investigators but did not indicate that she did not intend to appear. The prosecutor explained that he had since been contacted by the complainant's aunt, who informed him that she had taken food to the airport to give to the complainant and her child. Based on this information, the prosecutor stated that he was not sure whether the complaining witness was present on the island. He requested additional time to locate and secure the complainant's cooperation, explaining that his office might obtain a material witness order if she was found on the mainland and refused to return voluntarily. The prosecutor advised the court that,

---

[1]     HRPP Rule 54(a) (1996) states that the HRPP "apply to all penal proceedings in all courts of the State of Hawaii, except as provided in" HRPP Rule 54(b). Moana's case did not fall within any of the exceptions listed in HRPP Rule 54(b).

Because Moana's initial appearance occurred on a Thursday, the scheduled hearing would have occurred within the two-day time limit as calculated under HRPP Rule 45(a) (2012), which excludes holidays and weekends. All references to time limits or elapsed time are computed in accordance with this rule.

because Moana's initial appearance was on June 22, 2017, "the 30 days for preliminary hearing would run on Saturday, July 22nd" and requested that the hearing be rescheduled before that date.[2]

Moana moved to dismiss the complaint or, in the alternative, for the family court to set aside bail and release him on his own recognizance to the supervision of his church pastor or mother, who were present in the courtroom. The prosecutor opposed Moana's motion, citing the nature of the offense. He explained that the complainant was thirty-three-weeks pregnant at the time Moana allegedly bit and punched her, causing injury to her ear and a possible concussion. He further stated that the argument leading to the incident arose because the complaining witness asked for money to buy food for her and Moana's two-year-old child. The prosecutor asserted that the child was present during the events and Moana allegedly threw Lego-style blocks at the child's head, causing bruising.[3] He also pointed to Moana's 2014 arrest for abuse of the same complaining witness, contending that the alleged attack was an

---

[2]    HRPP Rule 5(c)(3) requires courts to schedule a preliminary hearing within thirty days of a defendant's initial appearance "if the defendant is not in custody." If a defendant has been "held in custody for a period of more than 2 days after initial appearance without commencement of a defendant's preliminary hearing," the rule mandates the defendant's release upon his or her own motion. This provision is subject to several narrow exceptions, discussed infra.

[3]    The prosecutor explained that the State intended to pursue misdemeanor child abuse charges against Moana in a separate proceeding.

escalation of violence toward the individual and that Moana might be a danger to her. Lastly, the State argued that there had been "some obstruction" from Moana's family during the investigation, making release into their custody inappropriate. Taken together, the State concluded, these factors were compelling reasons to continue the hearing and to keep Moana in custody.

The family court granted the State's motion for a continuance and denied Moana's motion for dismissal of the complaint. Seemingly relying on the State's assertion regarding the thirty-day period in which a preliminary hearing must be held, the court noted that the "hearing [had been] set very expeditiously within the 30-day limit," which left the court free to continue it without legal obstacle.

With respect to bail reduction, the family court noted several factors guiding its discretion in setting or modifying bail, including Moana's criminal history, the nature of the offense, and the vulnerable nature of the complainant and their child.[4] The prosecutor asked for clarification regarding whether

---

[4] The family court also expressed general concern regarding individuals who threaten or otherwise attempt to persuade a witness not to testify, referencing an unrelated recent news story. Because the parties did not allege such coercion and the record does not reveal any linkage of the news story to the facts of the case, we do not address the court's general concern.

these findings relating to bail also constituted compelling reasons for the continuance and for keeping Moana in custody, to which the court answered affirmatively.

The family court confirmed bail at $30,000 and scheduled the continued preliminary hearing for July 13, 2017, which was 15 days after Moana's initial appearance. The court informed the prosecutor that it had intentionally left time before the presumed 30-day deadline for another continuance if necessary, but it went on to warn that "the next time . . . if the complaining witness fails to appear . . . [the State] need[s] a lot more information than what somebody might have said." Prior to the continued hearing date, Moana filed with this court a petition for a writ of mandamus.

## B. Curioso's Arrest and Preliminary Hearing

Police arrested Curioso on March 10, 2017, for abuse of family or household members, HRS § 709-906 (2014 & Supp. 2016). On March 13, 2017, Curioso was charged by complaint in the District Court of the First Circuit (district court) with kidnapping, HRS § 707-720(1)(d) (2014), terroristic threatening in the first degree, HRS § 707-716(1)(e) (2014), and abuse of family or household members with a statutory enhancement to a class C felony based on the charged conduct, HRS § 709-906(1), (8). Bail was set at $150,000 in the aggregate, and a preliminary hearing was scheduled for March 15, 2017.

On the day of the preliminary hearing, the prosecutor requested a continuance to March 21, 2017, to obtain a Tagalog interpreter for the complainant, for whom English was a second language. Curioso objected and moved for release on his own recognizance or, in the alternative, a reduction in bail. The court denied Curioso's requests and granted the State's motion for a continuance. The court explained that the State's request was "reasonable" given that an interpreter was "necessary for the witness to give testimony" and the State was otherwise ready with its witnesses. The preliminary hearing was rescheduled by the court to March 21, 2017, which was six days after Curioso's initial appearance.[5] On March 16, 2017, Curioso filed a petition for a writ of mandamus.

## II. THE PETITIONS FOR WRITS OF MANDAMUS

Moana and Curioso argue that the judges in their individual cases violated HRPP Rule 5(c)(3) by denying their respective motions for release on their own recognizance. This rule requires that a court release a defendant upon motion "if the defendant is held in custody for a period of more than 2 days after initial appearance without commencement of a defendant's preliminary hearing." HRPP Rule 5(c)(3). However,

---

[5] The period also included a weekend, which is not figured into this total. See supra, note 2.

the State may maintain custody of a defendant when the delay is caused by the defendant or occurs with the defendant's consent. Id. Release is also not required when the failure to commence a timely preliminary hearing is attributable to a "compelling fact or circumstance" that would preclude determination of probable cause or commencement of the hearing or would render the defendant's "release to be against the interest of justice." Id.

In his petition for a writ of mandamus, Moana argues that a preliminary hearing did not commence within two days from his initial appearance, obligating the family court to release him upon his motion. Moana states that the court appeared to base its ruling denying his release on a finding of a compelling fact or circumstance. He disputes, however, that compelling reasons existed to hold him in custody under any of HRPP Rule 5(c)(3)'s exceptions. In its response, the State argues that the court properly found compelling reasons to keep Moana in custody, including Moana's criminal history, the nature of the alleged offense, and the vulnerable nature of the complainant and their child.

In his petition, Curioso similarly argues that a preliminary hearing did not commence within two days of his initial appearance and that none of HRPP Rule 5(c)(3)'s exceptions justified his continued detention. He asserts that

9

the State's failure to obtain an interpreter for the complainant was neither a compelling circumstance precluding the commencement of a preliminary hearing within two days of his initial appearance nor one rendering his release against the interest of justice. He points out that the State had five days to speak with the complainant following his arrest to determine if an interpreter was needed for the preliminary hearing.

The State responds that it diligently attempted to find an interpreter as soon as the complainant requested one. In a declaration attached to the State's response, the prosecutor who requested the continuance avers that her review of case materials prior to the hearing did not reveal a need for an interpreter and that she was not informed of the request until the morning of the scheduled preliminary hearing. She further avers that the State's victim witness advocate made calls to ten different interpreters but was unable to arrange one for the scheduled time. The prosecutor also states that she was unable to convince the complainant to proceed without an interpreter. The prosecutor does not aver that any of this information was placed on the record on the date of the scheduled hearing.

The State asserts that the lack of an interpreter to aid the complainant in her testimony constituted a compelling circumstance that justified the district court's decision to not

release Curioso.  In support of its argument, the State points to this court's repeated pronouncements regarding the fundamental importance of individuals involved in litigation understanding the proceedings and being understood in turn.

### III. DISCUSSION

### A. Mootness

As a threshold matter, we address whether the merits of the petitions are properly considered by this court.  We have long adhered to certain "prudential rules of judicial self-governance 'founded in concern about the proper--and properly limited--role of the courts in a democratic society.'"  Kona Old Hawaiian Trails Grp. v. Lyman, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)); Cty. of Haw. v. Ala Loop Homeowners, 123 Hawaiʻi 391, 405, 235 P.3d 1103, 1117 (2010).  Among these is the doctrine of mootness, which typically limits our rulings to "live controvers[ies] of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law."  Kona, 69 Haw. at 87, 734 P.2d at 165 (quoting Hall v. Beals, 396 U.S. 45, 48 (1969)).  Accordingly, we will generally refrain from deciding cases in which we can no longer grant the relief a party seeks.  Ala Loop Homeowners, 123 Hawaiʻi at 405, 235 P.3d at 1117 (citing

11

Kahoʻohanohano v. State, 114 Hawaiʻi 302, 332, 162 P.3d 696, 726 (2007)).

When a defendant is indicted or charged by criminal information, a preliminary hearing need not--and, under our rules, cannot--be conducted.  HRPP Rule (5)(c)(1) (2014).[6]  This is because a complaint and preliminary hearing, indictment, and criminal information are separate, parallel methods by which a felony prosecution may be initiated.  See Haw. Const. art. I, § 10; HRPP Rule 7(a)-(b) (2012).  The "real purpose" of a preliminary hearing is to confirm that probable cause exists to hold a defendant in custody, "and no purpose remains for" the hearing when probable cause is established through another mechanism, including indictment.  Chung v. Ogata (Ogata I), 53 Haw. 364, 366, 493 P.2d 1342, 1343 (1972) (citing State v. Tominaga, 45 Haw. 604, 372 P.2d 356 (1962)).  We have thus held that both a defendant's right to a preliminary hearing and a trial court's jurisdiction to conduct such a hearing are cut off by an indictment, even when it is returned after the continuance of the preliminary hearing.  Chung v. Ogata (Ogata II), 53 Haw. 395, 395, 495 P.2d 26, 26 (1972); Tominaga, 45 Haw. at 610, 372

---

[6]     HRPP Rule (5)(c)(1) states that "the court shall schedule a preliminary hearing, provided that such hearing shall not be held if the defendant is indicted or charged by information before the date set for such hearing."  (Emphasis added.)

P.2d at 360.[7]  The same would logically hold true for an information, by which probable cause may also be established. See HRS § 806-85 (2004).

On July 7, 2017, this court issued an order directing the State to respond to Moana's petition for mandamus.  The State filed a timely answer on July 10, 2017.  The following day, prosecutors charged Moana by felony information, cutting off his right to the continued preliminary hearing two days before it was scheduled to take place.[8]  Similarly, this court on March 17, 2017, ordered the State to respond to Curioso's petition.  The State filed a timely answer on March 20, 2017-- the day before Curioso's continued preliminary hearing.  The next day, the State obtained a grand jury indictment of Curioso,

_____

[7]  Tominaga and the two Ogata cases were decided prior to 1977, when preliminary hearings and indictments were governed by the District Court Rules of Penal Procedure (DCRPP) and Hawaiʻi Rules of Criminal Procedure (HRCrP).  The HRPP are substantially modeled after the DCRPP and HRCrP, however, and the holdings of Tominaga and the two Ogata cases are not undermined by the adoption of the HRPP.  See infra (discussing the history and adoption of HRPP Rule 5(c)(3)).

[8]  Unlike in Curioso's case, in which the State filed a notice informing this court of the defendant's indictment, the State did not notify this court that it had charged Moana by information.  Only research of the family court docket by this court revealed the supervening charge.  Although Hawaii Rules of Evidence (HRE) Rule 201 (1980) permits us to take judicial notice of such records on our own accord, we remind litigants that their duty of candor toward this tribunal includes a responsibility to disclose material facts that may affect the outcome of a case, including those facts that would render the case moot.  See AIG Haw. Ins. Co. v. Bateman, 82 Hawaiʻi 453, 460, 923 P.2d 395, 402 (1996).

13

which effectively blocked his preliminary hearing from proceeding hours before its scheduled commencement.

The petitioners' rights to preliminary hearings--and release prior to those hearings--were extinguished when probable cause to hold them in custody was determined through other mechanisms. Indeed, had the judges granted the petitioners' motions for release, the information and indictment would have formed independent legal bases for returning the petitioners to the State's custody. We are therefore compelled to deny the petitions as moot because we cannot provide the relief the petitioners seek.

This is not the end of our inquiry, however. We have recognized exceptions to the mootness doctrine when its application would defeat its own purpose of preserving the judiciary's proper role in a democratic society. See, e.g., State v. Tui, 138 Hawai'i 462, 468, 382 P.3d 274, 280 (2016) (applying "capable of repetition but evading review" exception to mootness); Hamilton ex rel. Lethem v. Lethem, 119 Hawai'i 1, 7, 193 P.3d 839, 845 (2008) (adopting collateral consequences exception to mootness); Doe v. Doe, 116 Hawai'i 323, 326, 172 P.3d 1067, 1070 (2007) (applying public interest exception to mootness). Notwithstanding our normal reluctance to rule outside of the context of a live controversy, this court will

14

resolve the merits of a claim for which it cannot grant relief when the alleged injury is capable of repetition but by its nature will evade appellate review.[9]  Tui, 138 Hawai'i at 468, 382 P.3d at 280.  This often occurs when a class of injury is brief enough that "the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit."  Id. (quoting Lethem, 119 Hawai'i at 5, 193 P.3d at 843).

These petitions fall within this exception to the mootness doctrine.  The two cases demonstrate that the continuance of a preliminary hearing beyond the two-day limit that HRPP Rule 5(c)(3) sets for defendants in custody is an event capable of repetition.  Yet the coinciding determination by the district or family court of whether to release a defendant will nearly always evade appellate review under conventional notions of mootness.  As discussed, a determination of probable cause renders the issue moot by eliminating an appellate court's ability to grant an effective remedy for the alleged injury.  This determination would occur when a

---

[9]  Although the "capable of repetition, yet evading review" exception has "merged at times" with the similar public interest exception to the mootness doctrine, "they are, in fact, 'separate and distinct.'"  Doe, 116 Hawai'i at 327 n.4, 172 P.3d at 1071 n.4 (quoting Kaho'ohanohano, 114 Hawai'i at 333 n.23, 162 P.3d at 727 n.23).

rescheduled preliminary hearing is conducted in full, leaving only the brief duration of the continuance to obtain legal redress. But even when this court stands ready to expeditiously resolve a challenge during this brief period, the State may bypass the court's review by filing an information or obtaining a grand jury indictment.[10] Because release decisions under HRPP Rule 5(c)(3) would otherwise be effectively unreviewable, we address the challenge the petitions raise in order to provide guidance to the district and family courts--although we are not able to grant the petitioners the release from custody they seek.

## B. HRPP Rule 5(c)(3)'s Release Mandate and Its Exceptions

Petitioners argue that HRPP Rule 5(c)(3) required the judges in their cases to grant their motions for release from custody. We review a trial court's interpretation of court rules de novo. See Enos v. Pac. Transfer & Warehouse, Inc., 80 Hawai'i 345, 349, 910 P.2d 116, 120 (1996).

HRPP Rule 5(c)(3) provides in full as follows:

> (3) TIME FOR PRELIMINARY HEARING; RELEASE UPON FAILURE OF TIMELY DISPOSITION. The court shall conduct the preliminary hearing

---

[10] Hawai'i Rules of Appellate Procedure (HRAP) Rule 21(c) (2006) requires that respondents be given an opportunity to answer prior to a court granting a petition for a writ of mandamus. This procedure provides notification to the State of this court's pending review of an HRPP Rule 5(c)(3) determination and affords an opportunity to file an information or obtain an indictment before the court may rule.

> within 30 days of initial appearance if the defendant is not in custody; however, <u>if the defendant is held in custody for a period of more than 2 days after initial appearance without commencement of a defendant's preliminary hearing, the court, on motion of the defendant, shall release the defendant to appear on the defendant's own recognizance</u>, unless failure of such determination or commencement is caused by the request, action or condition of the defendant, or occurred with the defendant's consent, or is attributable to such compelling fact or circumstance which would preclude such determination or commencement within the prescribed period, or unless such compelling fact or circumstance would render such release to be against the interest of justice.

HRPP Rule 5(c)(3) (emphasis added). Thus, if a preliminary hearing has not commenced within two days of the initial appearance of a defendant held in custody, the rule directs courts to release the defendant upon his or her own motion. This general requirement is subject to three exceptions, however. Release is not mandated when the failure to conduct a preliminary hearing within the prescribed time frame resulted from some action or condition of the defendant, upon the defendant's request, or with the defendant's consent. Release is also not required when a "compelling fact or circumstance . . . preclude[d]" the hearing from commencing or probable cause from being determined. Lastly, HRPP Rule 5(c)(3) allows a court to deny a defendant's motion for release when a "compelling fact or circumstance" would make the release "against the interest of justice."

The State does not argue that either judge relied on HRPP Rule 5(c)(3)'s first exception when denying the petitioners

17

their release.[11]   Rather, the State contends that the respective

courts found "compelling circumstances" that justified the

continued detention of the petitioners.  The State does not

specify which compelling circumstances exception of HRPP Rule

5(c)(3) applies, and it is not apparent from the context of the

courts' rulings.  We therefore consider each of these exceptions

in turn.

### 1. HRPP Rule 5(c)(3)'s Second Exception

HRPP Rule 5(c)(3)'s second exception permits the

continued detention of a defendant when "compelling" facts or

circumstances "preclude" the determination of probable cause or

the commencement of a preliminary hearing within the prescribed

two-day period.  The HRPP does not define "preclude" or

"compelling."  See HRPP Rule 2.3 (2012).[12]  "It is well

established that the interpretation of rules promulgated by the

supreme court involves principles of statutory construction."

---

[11]    We note that HRPP Rule 5(c)(3)'s first exception specifically provides that the release rule does not apply when the failure of the probable cause determination or commencement of the preliminary hearing is caused by the action of the defendant.  In other words, if the defendant's conduct, for example, has caused a witness to not appear, release from custody is not required, and a compelling circumstance is irrelevant.  In this case, however, the State did not contend at the hearing or in response to the petition that Moana engaged in any actions following the offense to cause the witness not to appear.

[12]    The HRPP cross-reference Hawai'i Electronic Filing and Service Rules (HEFSR) Rule 1 (2015) for definitions, but neither "preclude" nor "compelling" is defined in HEFSR Rule 1.

State v. Bohannon, 102 Hawai'i 228, 240, 74 P.3d 980, 992 (2003). The history and structure of HRPP Rule 5(c)(3) may therefore guide our understanding of these terms. See Morgan v. Planning Dept., Cty. of Kauai, 104 Hawai'i 173, 185, 86 P.3d 982, 994 (2004).

*a. The History of HRPP Rule 5(c)(3)*

Prior to 1977, two sets of rules governed Hawai'i courts in criminal cases: the Hawai'i Rules of Criminal Procedure (HRCrP) and the District Court Rules of Penal Procedure (DCRPP). The HRCrP were promulgated in 1960 to "govern the procedure in the courts of the State in all criminal proceedings." HRCrP Rule 1 (1960). Although HRCrP Rule 5(d)(1) (1960) provided a preliminary hearing to a defendant charged with a felony by complaint, the HRCrP neither specified a deadline by which such a hearing was to be conducted nor entitled the defendant to release when the hearing was not timely held. Rather, the rules required only that courts conduct the hearing "within a reasonable time." HRCrP Rule 5(d)(2) (1960). HRCrP Rule 5 did not further specify the parameters of what constituted a "reasonable time," and the rule was likewise silent on the remedy should the preliminary hearing not be held in a timely manner.

In November 1971, this court adopted and promulgated the DCRPP, which "govern[ed] the procedure in the district courts of the State in all penal proceedings."[13] DCRPP Rule 2 (1972). DCRPP Rule 25(b) (1972) functioned much the same as the version of HRPP Rule 5(c)(3) now in effect. Under DCRPP Rule 25(b), a defendant charged with a felony in district court who was held in custody was entitled to a preliminary hearing within forty-eight hours. If more than forty-eight hours passed without either a "disposition of the charge" or "commencement of a hearing," the district judge was required to release the defendant unless the defendant's release was prohibited by law or the delay was due to the defendant's "request, action or condition" or "occurred with [the defendant's] consent." DCRPP Rule 25(b)(1), (2). Release of the defendant was also not required if the court "was satisfied that the State ha[d] shown good cause why an order of release should not be issued." Id. (emphasis added). Additionally, the rule specified that "[s]uch good cause must consist of some compelling fact or circumstance which would preclude disposition of the charge within the

---

[13] The DCRPP superseded the HRCrP in district courts, in which the new rules applied when their application was not limited or modified by other laws. DCRPP Rule 2 (1972). The HRCrP were left intact in all other courts. See Ogata I, 53 Haw. at 368, 493 P.2d at 1345 ("Those rules apply only to proceedings in the district courts and before district judges. No provision thereunder applies to proceedings in the circuit courts . . . . [T]he circuit courts are governed by [the] H.R.Cr.P.").

prescribed period or would render such release to be against the interest of justice." Id. (emphasis added).

Thus, under DCRPP Rule 25(b), a defendant in custody who was charged with a felony and did not receive a timely preliminary hearing was entitled to release unless, inter alia, the State could demonstrate the existence of "good cause," defined by the rule as a "compelling fact or circumstance" that either (1) precluded the hearing from being held within the forty-eight-hour window, or (2) rendered the defendant's release against the interest of justice. Id.

In 1977, the Hawaii Rules of Penal Procedure (HRPP) were adopted to replace the HRCrP and the DCRPP and to provide a comprehensive, unified set of rules governing criminal procedure in Hawai'i. See Comm. for Penal Rules Revision of the Judicial Council of Haw., Proposed Hawaii Rules of Penal Procedure at i-ii (June 1975) (stating that the HRPP were "intended to govern penal procedure in all of the courts" and "will supersede both the [HRCrP] and the [DCRPP]"). In crafting the HRPP, the drafters sought to "retain the present rules [of the HRCrP] wherever justified." Id. at ii. The Penal Rules Revision Committee (the Committee) declined to retain the substance of HRCrP Rule 5 regarding preliminary hearings, however, in favor of a rule modeled after the more-protective DCRPP Rule 25.

Under a proposed draft of the HRPP transmitted to the Judiciary, courts were required to conduct a preliminary hearing for a defendant in custody on felony charges, and, "if the defendant [was] held in custody for a period of more than 4 days after first appearance without either a determination of probable cause or commencement of a hearing thereon," the defendant was entitled to release. Id. at 10—11. The proposed rule retained two of DCRPP Rule 25's exceptions, permitting courts to deny release if the failure to timely conduct or commence a preliminary hearing (1) was caused by "the request, action or condition of the defendant or occurred with his consent" or (2) was attributable to "some compelling fact or circumstance which would preclude [the probable cause] determination or commencement within the prescribed period." Id. at 11.

HRPP Rule 5 as adopted and promulgated by this court did not incorporate the Committee's proposed departures from DCRPP Rule 25, including the extended four-day time limit for holding a preliminary hearing when a defendant is held in custody. See HRPP Rule 5(c)(2) (1977). The court instead retained the forty-eight-hour time limit and the exception permitting the continued confinement of a defendant when compelling circumstances rendered release against the interest of justice. See id. The rule has remained substantially the same in the years since.

22

The history demonstrates this jurisdiction's strong commitment to protecting defendants held in custody by providing a prompt preliminary hearing. The Committee first rejected the more flexible "reasonable time" standard contained in the HRCrP when the DCRPP were promulgated, instead establishing a firm deadline subject to few exceptions. Thus, an approach based on "reasonableness" that would have weighed the State's administrative or prosecutorial needs against the hardship of the defendant was rejected, and instead the Committee recommended a proposed rule under which the rights of the defendant were highly protected. This intention was reaffirmed when the Committee modeled Rule 5 in the proposed draft of the HRPP after the more protective DCRPP rule, notwithstanding its otherwise stated intention to "retain [the HRCrP] wherever justified." Proposed Hawaii Rules of Penal Procedure at ii. The commitment was again confirmed when this court adopted and promulgated the HRPP, strengthening Rule 5's protections for in-custody defendants beyond those contained in the proposed draft of the Rule by reducing the prescribed time frame for commencement of the preliminary hearing from four days to forty-eight hours.

The implication from the history of HRPP Rule 5 is clear: there is a strong presumption that a defendant should be released upon motion if a preliminary hearing has not commenced

23

within two days, and holding a defendant for a longer period without a preliminary hearing is permissible only in very limited situations. Indeed, implicit in this court's adoption of a two-day time limit over the proposed four-day limit was a statement that a delay of even two additional days was presumptively not permissible. This presumption is also evident in the framework of the rule itself.

> b. *The Structure of HRPP Rule 5(c)(3)*

Our strong commitment to protecting defendants from prolonged confinement without a preliminary hearing is reflected in HRPP Rule 5(c)(3)'s structure. Unlike the Federal Rules of Criminal Procedure and the rules of many other jurisdictions, the two-day time limit contained in HRPP Rule 5(c)(3) is not framed as a but-for requirement in order to proceed with the preliminary hearing. Compare HRPP Rule 5(c)(3) with Fed. R. Crim. P. 5.1(c) (2009) ("The magistrate judge must hold the preliminary hearing . . ."); Del. Super. Ct. Crim. R. 5(d) (2016) ("Such examination shall be held . . ."); and Alaska R. Crim. P. 5(e)(4) (2017) (same). That is, HRPP Rule 5(c)(3) provides only for the release of the defendant upon the defendant's motion if a hearing is not conducted within the prescribed time period; it does not provide for the dismissal of charges without prejudice, as many courts have held to be the case under the "mandatory" language of other jurisdictions. See

State v. Hutcheson, 352 S.E.2d 143, 148 (W. Va. 1986) (citing United States v. Rogers, 455 F.2d 407, 412 (5th Cir. 1972); United States v. Milano, 443 F.2d 1022, 1024, 1025 (10th Cir. 1971); United States v. Assenza, 337 F. Supp. 1057, 1061 (M.D. Fla. 1972)).  Instead, the charges against the released defendant remain pending when the defendant is released, and the thirty-day time limit for out-of-custody defendants, which is couched in mandatory terms, becomes applicable.  In other words, HRPP Rule 5(c)(3) allows the State up to thirty days from a defendant's initial appearance to remedy any complication that made conducting a preliminary hearing within the two-day time limit inconvenient or otherwise problematic.  However, the rule requires that the defendant be released from custody upon motion until such a hearing takes place unless the State demonstrates that one of the rule's narrow exceptions is applicable.

  *c. The Language and Operation of HRPP Rule 5(c)(3)*

  With these principles in mind, we turn now to the language of HRPP Rule 5(c)(3)'s second exception.  The rule does not require the release of a defendant from custody upon motion if the nonoccurrence of a preliminary hearing "is attributable to such compelling fact or circumstance which would preclude such determination or commencement within the prescribed period."  HRPP Rule 5(c)(3).  This phrasing suggests two separate requirements: a "compelling fact or circumstance" must

exist, and that fact or circumstance must "preclude such determination [of probable cause] or the commencement [of a preliminary hearing]" within two days of the defendant's initial appearance.

We interpret the meaning of "compelling" in light of our historical commitment to providing a defendant held in custody with a preliminary hearing within two days of initial appearance such that release is strongly presumed to be appropriate if a preliminary hearing does not commence within this period. Both our history and the structure of HRPP Rule 5(c)(3) indicate that only in narrow circumstances will the presumption be displaced, allowing the defendant to be held longer than two days without commencement of the preliminary hearing. Thus, a compelling fact or circumstance is an occurrence or situation that is of such gravity as to overcome the strong presumption that the release rule applies.

The absence of a witness from a hearing does not in itself present a circumstance of sufficient gravity to displace the strong presumption that the release rule applies. Indeed, were the voluntary nonattendance of a witness considered compelling for purposes of HRPP Rule 5(c)(3), a witness could extend a defendant's captivity at will simply by electing not to attend the preliminary hearing. Such a result would be plainly contrary to the strong presumption of release embodied in the

26

rule.  Rather, when the State has used due diligence to obtain the witness's presence, the court must consider the reasons for the witness's absence, if known.[14]  Because the release rule is designed to have broad application, a situation must present serious considerations in order to be compelling.  Further, a circumstance caused by the State's failure to exercise due diligence will rarely overcome the strong presumption that the release rule applies because the rule exists to protect defendants against unnecessary delays.

This interpretation is consistent with our application of the compelling circumstance phrase in other contexts.  In Gannett Pacific Corp. v. Richardson, for example, we considered when preliminary hearings--like the ones here at issue--could be closed to the public.  59 Haw. 224, 233, 580 P.2d 49, 56—57 (1978).  We determined that a departure from "this jurisdiction's policy of openness in judicial proceedings" was justified only when the court concludes that the public's exposure to potentially inadmissible evidence was substantially likely to interfere with the defendant's right to a fair trial by an impartial jury.  Id.  We would later describe this decision as holding "that except under certain rare and

---

[14]     When the reasons for a witness's absence cannot be ascertained, evidence of whether the witness intended to cooperate may be relevant to the court's analysis.

compelling circumstances, courtroom proceedings shall be open to the public." Oahu Publ'ns Inc. v. Ahn, 133 Hawai'i 482, 495, 331 P.3d 460, 473 (2014) (other emphasis omitted) (quoting Honolulu Advertiser, Inc. v. Takao, 59 Haw. 237, 238, 580 P.2d 58, 60 (1978)). Just as in the present cases, we identified a strong policy commitment "firmly embedded in our system of jurisprudence." Gannett, 59 Haw. at 228, 580 P.2d at 54. As here, we permitted this commitment to be overcome only by a showing of circumstances that raised a countervailing concern of great enough weight to overcome the strong presumption that the standard rule applies. See also Amemiya v. Sapienza, 63 Haw. 424, 428, 629 P.2d 1126, 1129 (1981) (holding that, notwithstanding legislative delegation of prosecutorial discretion to city and county public prosecutor, state attorney general may "supersede" public prosecutor "in certain compelling circumstances," including "dereliction of duty" and when conflict of interest exists).

Even when a compelling fact or circumstance is found to be present, however, it must actually result in preclusion of "determination [of probable cause] or commencement [of a preliminary hearing] within the prescribed period" for HRPP Rule 5(c)(3)'s second exception to apply. "Preclude" is generally defined as "to prevent or make impossible; to rule out

28

beforehand by necessary consequence."  Preclude, Black's Law Dictionary (10th ed. 2014).  Preclusion will therefore occur either when a circumstance prevents the determination of probable cause at a preliminary hearing or when a circumstance prevents the commencement of the hearing within the two-day time frame.  The former situation will arise, for example, when there is an unavailability of evidence that is crucial to the probable cause determination.  The latter situation occurs, for example, when court personnel required to conduct a hearing, such as defense counsel, are unable to be present.[15]

An implicit corollary to the rule's provisions is that any continuance granted under HRPP Rule 5(c)(3)'s second exception must be no longer than needed to resolve the compelling fact or circumstance that precluded the determination of probable cause or the commencement of a hearing within the two-day time limit.  The court must be informed how the State intends to expeditiously address the circumstance precluding the determination of probable cause or commencement of the hearing, and any continuance must be circumscribed to the period

---

[15]    HRPP Rule 5(c)(3) additionally requires that there be a causal link between the compelling fact or circumstance and the nonoccurrence of the hearing.  The "failure of such determination or commencement" must be "attributable to such compelling fact or circumstance."  HRPP Rule 5(c)(3) (emphasis added).  Even when a hearing is precluded and a compelling fact or circumstance is present, HRPP Rule 5(c)(3)'s second exception will not apply when the preclusion resulted from a separate, noncompelling event.

necessary to resolve that circumstance. The rule's language, structure, and history demonstrate a policy determination that an in-custody defendant should be afforded a preliminary hearing within the prescribed time frame of the rule. Any deviation from this time frame should be measured relative to the two-day limit--not the thirty-day limit applicable to out-of-custody defendants. Thus, the length of a requested continuance must be consistent with the rule's objective of a <u>prompt</u> probable cause determination.

In summary, two days is the presumptive limit of acceptable delay, and holding a defendant without a preliminary hearing for a longer period is authorized under HRPP Rule 5(c)(3)'s second exception only when compelling circumstances prevent a timely determination of probable cause or commencement of the hearing.[16] The period of any requested continuance must be consistent with the prompt-determination purpose of the rule and correlated in duration to the specific circumstance that caused the preliminary hearing to not commence within the two-day time frame.[17]

---

[16] We note that this corollary also applies to HRPP Rule 5(c)(3)'s other exceptions to the standard release rule. Under the rule's first exception, for example, a hearing continued because of a defendant's condition should occur as soon as the condition is alleviated.

[17] Both petitioners acknowledge a dearth of caselaw regarding when a preliminary hearing "commences" for purposes of HRPP Rule 5(c)(3). They

(continued . . .)

> *d. Application to Moana and Curioso's Cases*

The cases at hand provide illustrative examples of the operation of HRPP Rule 5(c)(3)'s second exception. In Moana's case, the State argues that the complainant's nonappearance despite being properly served was a compelling fact or circumstance.[18] Turning initially to the preclusion requirement of the second exception, the complaining witness's absence at the preliminary hearing likely precluded a determination of probable cause, insofar as the witness's testimony would provide crucial evidence on this issue. However, the State's plan for

---

(. . . continued)

argue that the structure of the rule, which permits a delay in commencement without the release of the defendant if the delay occurs by the defendant's request or with the defendant's consent, necessarily contemplates an opportunity for the defendant to move for continuance or consent to the State's motion prior to commencement of the hearing. Commencement must therefore occur later, when witnesses are sworn or evidence is presented, they conclude. The State does not dispute this point.

We note that HRPP Rule 5(c)(3)'s text indicates that the two-day time limit for in-custody defendants is satisfied if a preliminary hearing commences within the time frame, and that conclusion of the hearing within the two-day period is not required. In other words, a hearing commenced within the two-day period may extend beyond that time frame without necessitating the release of the defendant upon motion. However, any continuance granted after the commencement of the hearing must satisfy one of HRPP Rule 5(c)(3)'s exceptions or be based on the court's inability to complete the hearing on the scheduled day due to time restraints. Any continuance would presumably be to the next court day.

[18] The State also proffers Moana's criminal history, the nature of the offense with which Moana was charged, and the vulnerable nature of the complainant as compelling circumstances on which the court relied. Because these circumstances do not prevent the determination of probable cause or the commencement of preliminary hearing within the two-day time frame, they clearly do not qualify under HRPP Rule 5(c)(3)'s second exception. We consider them further with respect to HRPP Rule 5(c)(3)'s third exception, discussed infra.

securing the attendance of the complaining witness was of an indefinite nature and duration.  To hold a defendant during a continuance pursuant to HRPP Rule 5(c)(3)'s second exception, the State must set forth the specific steps that it intends to take to expeditiously resolve the compelling circumstance, and the requested continuance must be limited to that time period. Here, the State made only vague statements indicating that it would attempt to locate and serve the witness again, possibly attempting to obtain a material witness order if necessary. Indeed, the State acknowledged that the complainant may no longer have been in Hawai'i and offered no information suggesting it had any knowledge of the witness's current location.  The strong presumption of release does not permit the State to hold a defendant for a period of time that does not preserve the defendant's right to a prompt probable cause determination.

Because the continuance was clearly not limited to the time necessary to expeditiously resolve the circumstance precluding the hearing, we do not address whether the complaining witness's absence constituted a compelling circumstance in light of the witness's possible departure from the jurisdiction and previously expressed reluctance to testify. However, we note that when a compelling circumstance is not present or it cannot be ascertained whether a witness's

32

attendance can be promptly obtained, the court following the release of the defendant from custody may continue the preliminary hearing to any point within the thirty-day time limit for an out-of-custody defendant.

In Curioso's case, the complainant was present and ready to testify at the scheduled preliminary hearing but was impeded from doing so by the lack of an interpreter. The State avers that it could not have discovered the need for an interpreter earlier through ordinary diligence and that it made diligent efforts to obtain an interpreter as soon as the complainant requested one.[19] As we have said, "inherent in [the] nature of justice is the notion that those involved in litigation should understand and be understood." In re Doe, 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002) (quoting Figueroa v. Doherty, 303 Ill. App. 3d 46, 50, 707 N.E.2d 654, 658 (1999)).

---

[19] Although we assume in this case that the State exercised due diligence in attempting to secure an interpreter, we note that there is no indication in the record that the State contacted the court for assistance. The court is equipped with many resources in this area, including the ability to appoint an interpreter of its own selection at a hearing or trial. See HRPP Rule 28(b) (2012). Further, the Hawai'i State Judiciary has committed to "reasonably provid[ing], free of charge, and in a timely manner, competent court interpreters for parties, witnesses and individuals with a substantial interest in a case." Judiciary's Language Access Policy, Hawai'i Judiciary Policy #12 (2014); see also Hawai'i State Judiciary, Language Access Plan for Persons with Limited English Proficiency, FY 2015-2016, at 9 ("Non-Judiciary staff, including a public defender, prosecuting attorney, private attorney, or community advocate, may also inform the court of a client's need for an interpreter in a particular case.") http://www.courts.state.hi.us/docs/services/LEP.pdf.

Given the fundamental importance of an interpreter in courtroom proceedings, the inability to obtain one presented a circumstance of such gravity as to overcome the strong presumption that inheres in the release rule.

The facts of the situation were thus compelling under the first prong of HRPP Rule 5(c)(3)'s second exception. The interpreter was also essential court personnel necessary to commence the preliminary hearing. With both requirements of HRPP Rule 5(c)(3)'s second exception met, the district court would have been justified in relying upon it to deny Curioso's motion for release.

However, the facts concerning the complaining witness's late request for an interpreter, lack of prior indication that an interpreter was needed, and the State's efforts to locate an interpreter were not shown to be part of the record of the hearing in this case.[20] The district court also continued the hearing without any inquiry into when an interpreter could be obtained, and instead of continuing the hearing to the next day, which was a Friday, the hearing was rescheduled for the following Tuesday--after the weekend. As discussed, when a defendant is kept in custody beyond the two-

_____

[20] The information was contained in an affidavit submitted with the State's response to Moana's petition for a writ of mandamus.

day time limit pursuant to HRPP Rule 5(c)(3)'s second exception, any postponement of the preliminary hearing is to be limited to the time necessary to address the circumstance precluding the hearing--here, the minimum time needed to secure an interpreter.

## 2. HRPP Rule 5(c)(3)'s Third Exception

Because the State does not specify which of HRPP Rule 5(c)(3)'s exceptions the family court relied upon to deny Moana's motion for release and keep him in custody until a continued hearing date two weeks hence, we also address the proffered facts in relation to the rule's third exception, which allows a court to deny a motion for release if a "compelling fact or circumstance would render such release to be against the interest of justice."

Like HRPP Rule 5(c)(3)'s second exception, the rule's third exception requires that a court find that a "compelling fact or circumstance" exists in order to keep a defendant in custody. As we have concluded above, a fact or circumstance is compelling when it is of such gravity as to overcome the strong presumption that the standard release rule should apply to the situation.

The record does not indicate that any such compelling facts or circumstances were implicated in Moana's case. In addition to the nonappearance of the complainant, discussed above, the State argues that the family court relied upon three

compelling circumstances when it required Moana to remain in custody while the complainant's whereabouts were being determined: the nature of Moana's alleged offense, the vulnerable nature of the complainant and their child, and Moana's criminal history, which the State argues collectively indicated a potential danger to the absent complainant. However, simply referencing the nature of an alleged offense does not present a fact that justifies departing from the standard rule because HRPP Rule 5(c)(3) was formulated and adopted to apply to all criminal offenses. The rule does not provide for different periods of custody based on the type of offense. That is, the third exception applies to compelling circumstances and not offenses categorized as compelling.

Additionally, the record does not demonstrate any specific factual allegation that Moana posed a risk to the absent complainant that was of a sufficient gravity to overcome the strong presumption that the standard release rule should apply to the situation. Indeed, the State's argument that Moana posed a potential risk to the complainant was undermined by the basis of its request for the continuance and the family court's apparent reasoning for granting it. The complainant's whereabouts were unknown to the State, and the requested additional time by the prosecutor was to <u>locate</u> and obtain the complainant's cooperation. The prosecutor further explained

that his office might obtain a material witness order if the complainant was found on the mainland and refused to return voluntarily. The court itself referred to the insubstantiality of the prosecutor's request in its ruling, warning the prosecutor that "the next time . . . if the complaining witness fails to appear . . . [the State] need[s] a lot more information than what somebody might have said."[21] The lack of a showing of compelling circumstances for the continuance request is clearly evident.

Even had the asserted facts constituted compelling circumstances, the State did not present the court with proposed measures to expeditiously address the concerns raised. The strong presumption of release requires that a defendant in custody be afforded a hearing as promptly as feasible, and a continuance should in no event be longer than necessary to resolve the compelling circumstance that justified holding a defendant beyond the two-day time limit. Just as under HRPP Rule 5(c)(3)'s second exception, the rule's third exception does not authorize holding a defendant without a probable cause determination for a period beyond what is required by the

---

[21] The family court's comments regarding "what somebody might have said" referred to the prosecutor's statement to the court in his continuance request that he had been contacted by the complainant's aunt, who informed him that she had taken food to the airport to give to the complainant and her child.

compelling circumstance, and any continuance granted must comply with the prompt hearing mandate embodied in the rule.

It is also noted that HRPP Rule 5(c)(3)'s third exception contains a second prong that requires a court to determine that the defendant's release would be "against the interests of justice." Because the record does not support a finding that compelling circumstances existed to overcome the strong presumption that release was required, we do not address the possible situations in which the interests of justice provision may apply.

## IV. CONCLUSION

Because the petitions are moot, we cannot provide the relief the petitioners seek and therefore deny their petitions. We nonetheless consider the legal questions they present, which are capable of repetition but would otherwise evade review, in order to provide guidance to the district and family courts. We hold that HRPP Rule 5(c)(3) provides a strong presumption that the release upon motion of a defendant held in custody is required when a preliminary hearing has not commenced within two days of initial appearance. When a delay is not caused by a defendant and occurs without the defendant's consent, courts may deny a defendant's motion for release only in a circumstance that is of such gravity as to overcome the strong presumption of release. If such a compelling circumstance is found, the

38

continuance of the preliminary hearing must be consistent with the prompt-determination objective of the rule and must be no longer than needed to resolve the circumstance making the delay necessary.

Jon N. Ikenaga
for petitioners

Rafael K. Renteria
for respondent in
SCPW-17-0000532

Leigh M. Okimoto
for respondent in
SCPW-17-0000171

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

